0730438 and 0730448. Good morning. Good morning, Your Honor. Nice once again to be in Seattle. My name is Steve Hadden, lawyer from Helena, Montana. I'm here on behalf of Jesse Decelles, Mr. Michael Donahoe with the Federal Defender's Office in Helena. I'm here on behalf of Mr. Donahoe. In this case, we have decided we will split our time equally, so I'll have about five minutes and then turn it over to Mr. Donahoe. All right. Thank you. I believe, Your Honors, that fundamentally we have one main issue in this case, one sub-issue. The main issue relates to, in the case of Mr. Decelles, whether a six-level enhancement under 2K2.1B5 was appropriate because, as was found by the district court, the firearm that Mr. Decelles had stolen during the course of the burglary had the potential of emboldening his role in the offense, namely the underlying burglary. The United States v. Valenzuela opinion was, as we can say, almost fresh off the press at the time Mr. Decelles' sentencing hearing was held, and we believe that a plain reading of this Court's decision in Valenzuela leads to a contrary conclusion than what was found at the district court level. Of course, if we are to read the third prong of this Blockburger test, which was used extensively in Valenzuela, arguably a plain reading of that test would suggest that it applies, namely that the firearm had the potential to create an emboldening role in the offense. However, if we look at Valenzuela and some of the other discussion that is in that case, I don't believe Valenzuela can be said to be read that narrowly. I think we have to... To some extent, this is the way it was briefed also, and rather argued in the district court, to some extent it puts a cart before the horse. The first question is, isn't it, do we apply the, I think at the district court you all said the 2006, it really should be the 2007 guidelines, or do you apply the 2005 guidelines? If you apply the 2007, school's out, right? Well... Unless there's an ex post facto problem which states you have 2005. Unless there's an ex post facto. Correct? I'm not willing to, I guess, acknowledge, Your Honor, that if the 2007 guidelines are applied, certainly, as the President of this Court and of the U.S. Supreme Court, I believe Stinson has said, the guidelines are to be given the commentary to the guidelines, and that's what we would be talking about is this additional language which came in in 2007, which said that this particular provision applies if a firearm's taken during the course of a burglary, even if it's not used for anything else. That seems to be, to me, to be contrary to the Valenzuela opinion, and may arguably be an incorrect reading of that particular guideline section. Well, that language seems pretty clear in the amendment, that if you take a gun during a burglary, then this is what happens. But the question is, is it a clarifying, or does it substantively change that? And if it's clarifying, you know, I think that puts the nail in the coffin for you. But if it's not, then I think we're back to the Valenzuela, and the question is here, did the Court analyze it sufficiently to, you know, do the facts in this indicate emboldening? Yes. And in our view, Your Honor, it is a substantive change. We have not only what I would characterize as the opinion of this Court in Valenzuela, but we also have opinions from at least three other circuits which suggest that if a firearm is taken in a burglary and nothing else happens, it's not used to facilitate the burglary, you know, the pawn shop scenario runs through all these cases, then we have, you know, at least four circuit courts, which our reading of the case law is that then that does not apply because there is not this separation of time element which comes into play. And if, in most situations, where we have a court which has interpreted a guideline in a particular manner, and then we have a, something that comes into play in which the Sentencing Commission says we don't agree with these opinions, we're here to resolve a circuit's law, then that certainly in our view is a substantive change. In other words, it would be ex post facto. And that would implicate ex post facto provisions. So that's why you go to the 2005. That's why we use 2005. And that language is not in there. That is correct. I've got Mr. Donahoe. All right. We'll let your co-counsel argue, and then if we need any time for rebuttal since we have so many cases on for argument, I, you know, I'll, if we have any other questions, I'll allow additional time for that. Go ahead. Thank you. My name is Michael Donahoe. I'm from the Federal Defender's Office. I'm here on Mr. Case's behalf. Good morning. Good morning, Your Honors. I'm pleased to be here. I always like coming. I guess the point I want to stress here is a practical matter. I would pray that Your Honors would please read carefully the root and decision that is cited in Valenzuela. I took the opportunity to do that since the case has been set for argument and re-read that decision last night. And there was some language in it, in root in itself, at 25 Fifth Third, 815. It says, to the extent that the government relies upon physical possession, it must show that the firearm was possessed in a manner that permits an inference that it facilitated or potentially facilitated, some words omitted, a defendant's felonious conduct. That language, I think, is where we need to spend some time. If you take Judge Maloney's reasoning, and I understand it completely, I think it's commonplace, and I'll even make this concession. Well, it isn't. It's not good news when people in residential burglaries have guns. And I understand, you know, obviously, I even in my own mind distinguish someone that goes to do a burglary with a gun. I mean, they're ready to engage with the residents if they find people or anything. Then, you know, I can see a distinction in terms of where someone happens to see a firearm during it. They're valuable. Much like I would like a piece of jewelry if you're a convicted felon and you can't go get your own gun. You know, they're worth money. You can sell them. You can have a gun that's not traceable. There's any number of things. But I don't think anyone in their home takes, you know, you'd rather have a burglar without a gun than a burglar with a gun. And I'm willing to make that concession. I think that all of us, especially those of us that work in the trenches in the criminal court, and especially the Article III judges down below, they know this. I mean, we all work on this assumption that burglary, even up in the Supreme Court cases, is a crime where you can draw the inference that there's potential for violence. So when the firearm is present, you bring those two together. And I'm not challenging that reasoning. But if you read Rudin's language carefully, there's a difference between drawing the inference, the actuality and the potentiality. If Judge Malloy is right, and he often is, the potentiality of this rule would swallow the actuality. We would never have to examine what the particular facts are. In this case, for instance, the actuality of violence, was it fired? No. Was the gun loaded? No. There's no evidence of that. There's no evidence of these things bearing on actuality of use. Well, let me ask you, Judge Malloy says what, you know, he states the obvious of what can happen in a burglary when someone has a gun. If, let's just say we, for just argument purpose right now, we agree with your assumption that the amendment is not clarifying that it's substantive, so that's not the, and so then you really have to look to the facts of this case. If we agree that this defendant had to be resentenced, could, are there other facts in the record that could be developed at that time? Or are you saying if we sent it back for remand that the court couldn't look to other facts? I guess I have two responses to that. First is that my knowledge of the record, and I think it's fairly comprehensive, is that there are no such facts, and none could be developed. I could be wrong about that. Maybe the government would have a different opinion. I mean, would the court be free to do that if we reversed and remanded? No, I think under Matthews we wouldn't be free to do that. The government didn't take its opportunity to put the evidence on. They kind of flubbed the burden of proof, which is also a very important component of this analysis. If you go back to Rutan and you think about the reasoning, 2D2.1, would we use that paradigm to analyze this kind of situation, Rutan rejects that and says no, and says we'll use the gun cases and that reasoning in connection with, and that shifts the burden of proof to the government. That's an important component here. And where I'll shut down in my last few seconds here is that the potentiality, although you can do it by inference, the test in Valenzuela demands, the way the case is written by that panel, that there has to be factual evidence that supports the potentiality. Was there something in the way of a person outside standing guard with a firearm and so on? Was there potential for violence in a factual sense? You are not free, respectfully, to draw the conclusion from Valenzuela as judgment-length in this case. Thank you, Your Honor. All right. Thank you for your argument. Good morning, Your Honors. Eric Wolf for the United States. I will try and not put the cart before the horse. The amendment applies. And on its face, I don't even know if there's any real dispute that on its face it's clarifying. Well, if you look through the analysis, it doesn't, you know, it's not listed as things that are supposed to be retroactive. It doesn't, you know, the only area that you can kind of go to that supports it is that there's a split in the circuits. On the other points, I think you fail. I think there's only one point which is the least important on which we fail, on that it's not listed among the retroactive. Clarifying amendments typically are not. You can list them, but only full-blown substantive amendments get listed under 1B1.10. It doesn't declare itself to be clarifying either. And that's the only one that I can't satisfy. Well, and it does suggest it's resolving a conflict. Yes. Now, assuming that's this conflict, this Court has indicated that if you're that's substantive. Well, this Court has said... Rising Sun? I'm sorry? Rising Sun, I believe it is. I've missed it yet again. Case called, I believe it's Rising Sun. Oh, I know Rising Sun. Rising Sun says that. Rising Sun, I, you know, well, we disagree with it in the brief. But just to be fair, that was a substantive change, at least the way the panel explained it. You had the obstruction of justice guideline that said it had to be obstruction during the investigation. Rising Sun was a guy who threatened to witness, like, right after the murder, before there's an investigation, and he remains under threat in the investigation and lies. The guideline is then changed, and the change is that you make the threat with respect to the investigation. So we've now broadened the substantive context. That's substantive. Can I just get one point in on back to they don't say it's clarifying. Just one. I'm sorry to point. You have two cases, Your Honors, Sanders and Morgan. They both involve clarifying amendments, and they both say that use of the magic words is not ñ it can't be wired away. Sanders points out the same thing, points out, well, this didn't increase the harm to the defendant. This decreased the harm to the defendant. We're going to treat it as clarifying. That's what Sanders said. I think there was a dissent on there that commented on that. I heard that said, and it says some things that I wholeheartedly agree with, which is the threshold question is look at the amendment. Is it clarifying or substantive? That was a dissent, though, you must understand, and that's not what Sanders did. Well ñ Nor is it what Rising Sun did. Well, the thing is our cases are kind of hard to harmonize, but the way to harmonize them would be certainly when it puts it up, that seems to be harmful. And this certainly is the same thing as putting in a new amendment that says, in the case of burglary, add six points. That is too broad, Your Honor. That is way too broad a rule. And quite frankly, if this court were to hold ñ just stepping back, big picture. If this court holds that this clarifying amendment actually violates the Constitution because of ex post facto concerns, that's a pretty stunning conclusion. I am ñ I can't take the position that we apply any new guidelines because they're now advisory and you can't have an ex post facto problem. That was the conclusion of Judge Posner in United States v. DeMarie. But let's get real. Like, they're advisory. It's not an ex post facto law. They're something that gets considered at sentencing. There's nothing about that ñ Well, you're not arguing that now, are you? I can't. You said you can't. I can't. Correct. So don't. But if you're going to hold that it's an ex post facto problem, you would have to cross that bridge. And it's a ñ I mean, you can say I crossed it because he waived it. But ñ I don't think it's quite as stunning as you think. That, I mean, it's sort of ñ Ex post facto is ñ Well, but you're saying if this court were to hold it, that's stunning. Where it's like ñ I recall back to my trial days when someone said, I was shocked by your tentative ñ I was shocked. Well, I would ñ I guess I would caution you from engaging in that sort of hyperbole. I'm sorry. I'm sorry. Courts don't respond well to their decisions being shocking or stunning. I'm sorry. I'm getting the impression I'm going to lose, so I'm starting to worry. You shouldn't take any impression. Why don't you go to Valenzuela, though? I'm happy to go to ñ I mean, you can say Valenzuela doesn't apply at all because ñ If I can harmonize ñ Wait a moment. I'm sorry. I take it what you would say is, assuming that this is only a clarifying amendment and there's not an ex post facto problem, then the 2007 guidelines should have been applied, correct? Yeah. You could look at it that way. Well, you could, yeah, if you read the guidelines. Isn't that what they say? I'm sorry, Judge Fernandez. You're right. Isn't that what they say? You're right. You apply the guidelines in effect at the time of sentencing. Okay. So the 2007 guidelines, unless it's ex post facto. Correct. Everybody seemed to agree you apply the 2005 guidelines in this case. Anyway, they were applied, okay? Yes. So you don't want us to do that. You want us to apply 2007, in which case you win the end, right? Correct. Even if we don't apply the 2007, now you've got to go to the next step. Well, actually, it's not quite that simple. In the 2005 guidelines, 1B1.11B2 says the court shall consider subsequent clarifying amendments. So even if I'm sitting at the trial court and I have the 2005 guidelines in hand and I'm applying them, 1B1.11B2 says shall consider subsequent clarifying amendments. This court has said several times that as long as it's clarifying, there's no ex post facto problem. I don't even think there's an ex post facto problem if it overrules or if it, you know, changes a prior decision. I put that in the brief. I'm happy to talk about that. That's not the case in this circuit. This circuit didn't go out and create a burglary exception to 2K2.1, like some other courts did. So those other courts can deal with that problem. This court doesn't have to. There's really no impediment in this circuit to applying the clarifying amendment at all. I'll go to Valenzuela. But I'll include the Sentencing Commission's analysis. When you have a gun in the home that you just illegally entered, that is enough emboldening. All it has to be is potentially emboldening, and that's emboldening enough. If someone's out on the street and or if the owner comes home, it doesn't even need to be loaded. And Mr. Donahoe said, well, there's no evidence it was loaded. Well, there's no evidence either way. But there is evidence that the next day they shot and killed a guy with the very .30-06. I suppose it's possible he had some .30-06 ammunition. You say the next day. From what I read in the record, it says the crime was committed sometime between this date and that date. How do you know it's the next day? Because the last date in that period was November 3rd, and the next day was November 3rd. That's a fair point. All right. Fair point. But the logic of the commission, and I think it accords with everyone's common sense, which was discussed earlier, is that when you're in the home and you stumble upon the guns, you now have the upper hand. And you are an emboldened burglar at that point. That is just the nature of possessing a firearm. It's going to scare people. All you have to do is brandish it. All you have to do is threaten it. What people is it going to scare? Homeowners, if they were to come home. I know there's a Beretta 380 Auto in my home, but it's unloaded, the ammunition's nowhere around. I come home from this trip, and a burglar is in my home, and he's holding my 380 Auto. The burglar's going to have a problem because I know it's not loaded. He may not know that you know that. That's why he's emboldened. That's why he sticks it in your face when you come through the door. Good point. Thank you. And that's just the reality of finding them. And the Fourth Circuit's opinion, in blunt, is very good at sort of debunking the myths of the Sixth Circuit, the Seventh Circuit, and the Third Circuit. It just flat-says, this is overblown. The concerns, and by the way, those concerns. You're a little beyond the guidelines, aren't you? I'm sorry? You're even beyond the commission at this point, aren't you? The burglar walks into my house, and he sees the gun that I keep on my kitchen table, right? Fully loaded, he sees it. And he's taking a whole lot of things, and then I come in. Is there a gun enhancement in your view? He needs to get to possession. He's got to take it first, doesn't he? Yeah. All I need is possession, another felony, which burglary is, and a connection. And if we were to go after him. He's just as emboldened him as sitting on the table, isn't he? In your view. Yeah, if he crosses the line to construct a possession, we got him. When he goes for it, we've got him. Then why did you have to have the amendment? Oh, because of the circuits. Because of the circuits that had created a burglary exception. And they created it for reasons that you provided, which was they said, you know, this is a four-level hit, and a mandatory guideline, that's a big hit. And, you know, some of these are like pawn shop robberies. They don't all involve home invasion. And some judges, and there were dissents. You know, there's a dissent in the Sixth Circuit. There's a dissent in the Third Circuit. They just kind of stepped back from that and said, you know, a four-level hit on a pawn shop break-in, that seems like a lot. But none of that's grounded in the guideline. I mean, it's just. So what you're saying is that they basically just got tired of judges fooling around with this and saying that that wasn't enough, so they needed to say this is what it means, and if you get the gun in the burglary, that's good enough. Don't need any more. Emboldening per se. Yes, that's one thing. But the other thing is, I see a lot of these. I'm sure you see a lot of these. This emboldening facilitation, whatever, it is angels on the head of a pin. It's case after case after case, and we look at it and look at it. And they took two categories of very common fact patterns, burglary and guns in close proximity to a drug trafficker, and they said per se you get the enhancement for these. It's supposed to make all of our jobs easier, but nobody wants to apply the amendment. All right. Let me just ask you this. Let's say we don't agree with you that it's clarifying and we. . . I'm sorry. Yeah, you need to hold. . . We're not going to award an Academy Award here. I'm sorry. I was here on Jimison. It's, you know. . . Can we go to the hypothetical? All right. Let's assume that we don't agree with you on that and we feel that this record isn't sufficient under Valenzuela. Do you have a. . . Can you develop anything more in the record? Do you have a right to go back and do that? I think we should have a right to do that. This Court has cases that say generally when you remand for resentencing, it's an open remand. I don't see any reason why it should be a limited remand in this instance. Whether we can develop more facts, I honestly don't know. I didn't handle it in the trial court. And what went on in terms of how they behaved inside the cabin, they're probably only going to know that, just like the only guy who knows whether the guy who's dead was shot in self-defense or the two guys who are still alive. And that's. . . I don't know. I think an open remand would be the typical remand. All right. Do either of the panel members have any additional questions? All right. We're over time, but that's fine because we had questions. I'll give each of you one minute to rebut if you choose. Thank you. Your Honor asked on remand if the government would have the ability to develop a more significant factual record. Our position is they would not. They're not going to be able to bring the horse back to the trough to come up with something that factually was available with the record or from the record at the district court level, and then come in and say, oh, well, we forgot about this. Let's pony up here and try to come up with something more to make this stick. One other point that I want to make, and focusing back to the recognizing the cart before the horse argument, Justice Fernandez, or Judge Fernandez, I want to, as Michael pointed out, we do have a focus here on the Valenzuela opinion, and there needs to be a connection that is clear from that language. And we don't have that here. We've got a burglary and the possession of a weapon. We don't have anything further. All right. Thank you. Thank you, Your Honor. I just want to quarrel with the representation that mere possession of a firearm buys this enhancement. That is categorically not the law prior to the law. Well, now it is the law. It is the law now. But it was not. And there must be articulable facts in the record that justify the enhancement, and there's none here. On top of which, insofar as my client is concerned, his liability is all derivative. It's all constructive possession. He never touched the firearms. Does the fact that they ended up, it's true it was ruled self-defense, but the fact that there was a shootout after this gun was stolen and someone got killed, is that something that can be considered in terms of, I mean, obviously they know how to use guns. So, you know, as opposed to someone else could say, hey, I have a gun, but I don't know how to use it. I guess I can't speak for Mr. Haddon's client. My client didn't pull the trigger. So he might not know how to use guns. And that's my familiarity with the record, I mean, unless something's changed. Okay. Thank you. Thank you both for your argument. This matter will stand submitted. This court's in recess until tomorrow at 9 a.m. Thank you.
judges: Fernandez, Callahan, Wright